STATE OF NORTH CAROLINA ) IN THE GENERAL COURT OF JUSTICE
) SUPERIOR COURT DIVISION
COUNTY OF CABARRUS ) Case Number:
)
)
TUWANA STEVENS, )
)
Plaintiff, )
) **COMPLAINT**
vs. ) **[Jury Trial Demanded]**
)
CABARRUS COUNTY BOARD OF )
EDUCATION, CABARRUS COUNTY )
SCHOOLS )
)
Defendants. )

## COMPLAINT

NOW COMES the Plaintiff, complaining of the Defendants, and alleges and says:

### NATURE OF COMPLAINT

This is an action seeking damages against Defendant for violation of Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964 and State Law.

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Tuwana S. Stevens ("Plaintiff") is a citizen and resident of Mecklenburg County, North Carolina.

2. Defendant Cabarrus County Schools ("CCS") is a local government unit that encompasses the vast majority of Cabarrus County, North Carolina and serves over 32,000 students.

3. Defendant Cabarrus County Board of Education (the "Board") is CCS's governing body, and may be served with process through its agent, Rob Walter, Board Chair, 4401 Old

1

Airport Road, Concord, NC 28025 (CCS and the Board will herein be referred to collectively as "Defendant" or "Defendants").

4. This Court has personal jurisdiction over the Defendant under N.C. Gen. Stat. § 1-75.4.
5. This Court has subject matter jurisdiction under N.C. Gen. Stat. § 7A-240 and N.C. Gen. Stat. § 7A-243.
6. Venue in this Court is proper under N.C. Gen. Stat. § 1-82.

## ALLEGATIONS

7. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.
8. Plaintiff began working for Defendant in August of 2015 at Cox Mill High School ("Cox Mill").
9. Plaintiff was hired by the Defendant for the role of Assistant II (4 hours per day).
10. Plaintiff was qualified for the position.
11. Plaintiff is a Black woman.
12. Plaintiff's role at Cox Mill primarily involved stocking items, prepping food, and cashiering.
13. Plaintiff endured verbal abuse by a co-worker, including being yelled at and being called stupid on a daily basis, from the time she began working as Assistant II and continuing for months unabated.
14. Plaintiff anonymously reported the verbal abuse to School Nutrition Program ("SNP") manager Amy Hill in February of 2016.
15. Ms. Hill said that she would speak with the offending co-worker.

2

16. When the co-worker found out that Plaintiff had reported the abuse, the abuse escalated.

17. Ms. Hill reported the incident to SNP Director Gayle Buddenbum.

18. Ms. Buddenbum requested a written statement from Plaintiff about the abuse.

19. Ms. Hill asked Plaintiff to water down the report rather than giving a full accounting of the nature, severity, and duration of the abuse.

20. Plaintiff denied this request and wrote a full and honest report to Ms. Buddenbum.

21. Plaintiff noticed that after giving this full report to Ms. Buddenbum, her working relationship with Ms. Hill changed.

22. Ms. Hill began treating Plaintiff coldly and it became very difficult for Plaintiff to work with Ms. Hill.

23. On March 15, 2016, Ms. Hill asked Plaintiff to come into her office to discuss Plaintiff's allegations.

24. During the discussion, Ms. Hill informed Plaintiff that there was an issue with a "black rat" in Ms. Hill's kitchen.

25. Plaintiff was under the impression that Ms. Hill was speaking about an actual black rat. Plaintiff asked Ms. Hill what she could or should do to help her get rid of the black rat.

26. Ms. Hill continued to repeat to Plaintiff that there was a black rat in the kitchen.

27. After a few minutes of Ms. Hill repeating the "black rat" comment, Plaintiff realized that Ms. Hill was referring to Plaintiff as a black rat, due to Plaintiff's race.

28. After the meeting, Plaintiff noticed that Ms. Hill had placed a small toy black rat on her desk.

29. Every day when Plaintiff worked as a cashier and finished her shift, Ms. Hill required

3

Plaintiff to count the money in the money drawer in Ms. Hill's office at her desk.

30. Other similarly situated employees who were not members of Plaintiff's protected class were not required to count their money in the presence of Ms. Hill.

31. In the end of March, 2015, Ms. Buddenbum contacted Plaintiff and asked to set up a meeting to discuss the allegations.

32. Plaintiff met with Ms. Buddenbum on March 29, 2016, at 10:00 AM.

33. At the meeting, Plaintiff discussed her comfort level working at Cox Mill High School, her concern that her job description was constantly changing, and her feelings of isolation due to the actions and behavior of Ms. Hill and Plaintiff's co-workers.

34. Two weeks before the end of the school year in 2016, Plaintiff met with Ms. Buddenbum and Ms. Hill.

35. During the meeting, Plaintiff discussed her concern that her job assignment was constantly changing. Additionally, Plaintiff discussed the noticeable attitude change in Ms. Hill that occurred immediately after she submitted her full and honest report to Ms. Buddenbum. Further, Plaintiff discussed the continual harassment that she received from her co-workers.

36. Shortly after this meeting, Plaintiff was transferred to Odell Elementary School for the remainder of the school year.

37. The stated reason for this transfer was that Ms. Hill felt she could no longer work with Plaintiff.

38. Because Odell Elementary School was being demolished and rebuilt at the time, Plaintiff was tasked with packing up the cafeteria and cleaning out the sheds.

39. Plaintiff felt degraded and humiliated because cleaning and preparing for the renovation was not part of Plaintiff's role as Assistant II.

40. When the 2016-2017 school year began, Plaintiff was transferred to Winkler Middle School ("Winkler").

41. Plaintiff's role at Winkler was Assistant II. She began the school year working at the Quick Bites station but shortly thereafter, she was assigned to the Fruits station.

42. On Quick Bites, Plaintiff's primary duties included preparing and cooking the hot items listed on the daily menu (e.g. pizzas, hamburgers, fries). Plaintiff was required to cook the items and wrap the items in foil paper and place them on the warmer for the students to select.

43. On Fruits, Plaintiff's primary duties included recording the amount of fruits used and recording the times the fruits were prepared and temperature of the fruits for food safety purposes.

44. Plaintiff experienced verbal abuse from co-workers during the 2016-2017 school year.

45. Staci Jerrell was the SNP Manager at Winkler while Plaintiff worked there.

46. A few months before the end of the school year, Ms. Jerrell informed Plaintiff that a position at the Bar would be available at the beginning of the 2017-2018 school year.

47. This position would be a promotion for the Plaintiff because the position Plaintiff held at Fruits was a 4-hour position, and the position at the Bar was 5 hours. This would increase Plaintiff's hours worked by 1 per day, and 5 per week, which would consequently increase her take-home pay.

48. The Bar position involved chopping and preparing vegetables, serving hot bar items, and

5

recording the amounts, times prepared, and temperatures of the foods being served.

49. Ms. Jerrell informed Plaintiff that she would recommend Plaintiff for the position.

50. Plaintiff applied and interviewed with Ms. Jerrell and Ms. Buddenbaum for the position shortly thereafter.

51. Plaintiff did not hear anything after applying for the job over the summer break.

52. At the end of the summer break and beginning of the 2017-2018 school year, Plaintiff returned to work at Winkler.

53. Because Plaintiff had not heard anything about the promotion, she asked Ms. Jerrell if she received the promotion when the school year began.

54. Ms. Jerrell stated that Plaintiff was denied the position.

55. When Plaintiff asked why she was denied the position, Ms. Jerrell stated that Plaintiff did not have enough experience.

56. The woman who was given the Bar position was not Black and had less experience than Plaintiff.

57. A few weeks later, Ms. Jerrell asked Plaintiff to take the Bar position because the woman hired for the position felt overwhelmed by doing the Bar and Cold Salads.

58. About a month later, Ms. Jerrell informed Plaintiff that the Bar would be a 4 hour position.

59. Plaintiff was confused because originally the Bar was a 5 hour position.

60. When Plaintiff asked why the time had been changed, Ms. Jerrell stated that a new employee had been hired to work on Fruits which would now be a 5 hour position.

61. The new employee had less experience than Plaintiff.

6

62. Plaintiff, a Black woman, was kept at a 4 hour position while two other employees, both non-Black and with less experience than Plaintiff, were given 5 hour positions.

63. Beginning in August 2017, new non-Black employees were hired and given more job responsibilities than Plaintiff, despite Plaintiff having more school nutrition and cooking experience than the new employees.

64. Plaintiff was given menial tasks like maintenance and dishwashing while non-Black co-workers were given more favorable positions like Hot Bar.

65. Plaintiff continued to experience verbal harassment by White supervisors and co-workers.

66. After being passed over for the Bar position, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC").

67. Plaintiff filed an initial charge of discimination with the EEOC against Defendants in September of 2018.

68. Plaintiff filed subsequent charges with the EEOC in November 2018, December 2018, February 2019, and May 2019, due to Defendants' continued discrimination of Plaintiff based on race and retaliation.

69. In February of 2019, Plaintiff was forced to work as a substitute in other public schools in the school district.

70. No other similarly situated employees at Winkler were asked to work as substitutes in other schools.

71. On March 15, 2019, at approximately 1:20 PM, Plaintiff was publicly humiliated in the presence of fellow staff, teachers, and students. A student with special needs came into

her line to purchase food. This student would routinely come into Plaintiff's line. Ms. Jerrell told the student to get out of Plaintiff's line. Ms. Jerrell informed Plaintiff, in front of the student, that she was no longer allowed to handle the purchases of the special needs students.

72. In April of 2019, a teacher who taught special needs children came to Plaintiff's line to purchase food on behalf of a special needs student. Plaintiff informed the teacher that she could not handle her purchase because it involved a special needs student. As the teacher left Plaintiff's line she stated to Plaintiff "I don't understand why you could not just ring me up". Plaintiff tried to explain to the teacher that Ms. Jerrell has informed her that she was not allowed to handle any purchases related to special needs students.

73. Plaintiff's employee evaluations from 2015-2018 ranged from satisfactory to excellent.

74. Her employee evaluations for the 2018-2019 school year were extremely poor.

75. There is no non-discriminatory reason for the sharp decline in Plaintiff's performance.

76. The sharp decline reflected in Plaintiff's 2018-2019 evaluations was due to the Defendants' racial animus and/or retaliation for Plaintiff's complaints.

77. On June 7, 2019, Defendant informed Plaintiff that she would shortly be terminated.

78. On June 13, 2019, Defendant terminated Plaintiff, with the stated reason of subpar work performance.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of Title VII of the Civil Rights Act of 1964)

79. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

80. By engaging in discriminatory acts, practices, and conduct described above, Defendant has discriminated against Plaintiff in the terms and/or conditions of her employment on the basis of her race, and retaliated against Plaintiff for complaining about the discrimination practiced by the Defendants, all in violation of Title VII of the Civil Rights Act of 1964, as amended.

81. By engaging in such discriminatory and retaliatory conduct, the Defendants either knew or should have known that their conduct would cause Plaintiff or any other person with ordinary sensibilities damage, injury, and suffering.

82. Indeed, as regards any person, whether a person of ordinary sensibilities or a hard-working African-American woman, severe emotional distress is a natural and foreseeable consequence of the type of discriminatory and retaliatory conduct practiced by the Defendants.

83. Despite allegations to the contrary, Plaintiff has performed her job satisfactorily, and in fact performed her duties at a level above and beyond those of her peers.

84. Nonetheless, in the instant case, Plaintiff suffered disparate and blatantly discriminatory treatment.

85. Plaintiff was passed over for advancement in favor of similarly situated and less experienced non-Black co-workers.

86. As a direct, proximate and foreseeable result of having been the victim of the discriminatory and retaliatory conduct that the Defendants have directed toward Plaintiff, she has been damaged.

87. Plaintiff has lost, and may continue to lose, substantial wages, with resulting loss of

9

future earnings and enjoyment of life due to her employment situation.

88. Plaintiff has suffered, and is continuing to suffer, severe emotional distress and mental anguish.

89. As compensation for the above-noted injuries and losses, Plaintiff is entitled to recover compensatory damages from the Defendants.

90. Furthermore, because the Defendants engaged in the aforesaid conduct with malice and in willful, wanton, and reckless disregard for the rights of Plaintiff, she is entitled to an award of punitive damages against the Defendants in an amount to be determined by jury.

## COUNT II
## Violation of the North Carolina Equal Employment Practices Act

91. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

92. The Defendants' treatment of Plaintiff was wrongful, wherein Plaintiff was passed over for advancement opportunities in favor of less qualified, non-Black workers, and wherein she was retaliated against for complaining about her working conditions.

93. The Defendants' treatment of Plaintiff is a violation of the strong public policy against discrimination, harassment, and retaliation in the workplace as codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et. seq.*

94. The corresponding conduct by Defendant is a contravention and degradation of public policy, prohibiting the discrimination of the member of a protected class (Black) on the basis of their class status, and prohibiting the discrimination of an employee based on that employee's engaging in protected activity, namely complaining about discrimination and harassment in the workplace.

95. As a direct and proximate result of the Defendants' wrongful and retaliatory conduct, Plaintiff has been damaged.

96. Furthermore, since Defendants engaged in the aforesaid conduct with malice and in willful, wanton, and reckless disregard for the rights of Plaintiff, Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

1. As to Count I of this Complaint, Plaintiff have and recover of the Defendants compensatory and punitive damages in an amount in excess of $10,000.00.

2. As to Count II of this Complaint, Plaintiff have and recover of Defendants compensatory and punitive damages in an amount in excess of $10,000.00.

3. As to all appropriate Counts of this Complaint, Plaintiff have and recover reasonable attorney's fees from the Defendants.

4. The costs of this action be taxed against the Defendants.

5. That this case has a Trial by Jury on all issues so triable.

6. For such other and further relief as to the Court may seem just and proper.

Respectfully submitted this the 12th day of March, 2020.

CREWS LAW FIRM, PLLC

*/s/ Shawntae Crews*
Shawntae Crews
State Bar No. 48704
Attorney for Plaintiff
725 East Trade Street, Suite 200
Charlotte, North Carolina 28202

11

Phone: (704) 559-9745
Fax: (704) 973-9747
Email: shawntae@thecrewslawfirm.com


THE RHODES FIRM, PLLC

*/s/ Khalif J. Rhodes*

_____
Khalif J. Rhodes
State Bar No. 41989
Attorney for Plaintiff
122 N. McDowell St.
Charlotte, North Carolina 28204
Phone: (704) 945-8648
Fax: (980) 888-8251
Email: khalif@rhodesfirm.com