| | |
|---|---|
| TUWANNA S. STEVENS,<br><br>Plaintiff<br><br>v.<br><br>CABARRUS COUNTY BOARD OF EDUCATION, CABARRUS COUNTY SCHOOLS<br><br>Defendant. | **PLAINTIFF'S FIRST AMENDED COMPLAINT**<br>Jury Trial Demanded |

# FIRST AMENDED COMPLAINT

Plaintiff Tuwanna S. Stevens, for her First Amended Complaint, alleges and says as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Tuwanna S. Stevens ("Plaintiff") is a Black woman. She is a resident of Mecklenburg County, North Carolina. She was formerly employed by the Defendant as Assistant II in the School Nutrition Program ("SNP").

2. Defendant Cabarrus County Schools ("CCS") is a local government unit that encompasses the vast majority of Cabarrus County, North Carolina and serves over 32,000 students.

3. Defendant Cabarrus County Board of Education (the "Board") is CCS's governing body, and may be served with process through its agent, Rob Walter, Board Chair, 4401 Old

1

Airport Road, Concord, NC 28025 (CCS and the Board will herein be referred to collectively as "Defendant").

4. The acts set forth in this Complaint were permitted, authorized, tolerated, ratified, ordered and/or done by the Defendant's officers, agents, employees and/or representatives while actively engaged in Defendant's business.

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this Complaint concerns issues of Federal Law.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) and 42 U.S.C. § 2000e-(5)(f)(3) as Defendant is subject to the personal jurisdiction of this Court and because many of the acts giving rise to this action occurred in this District.

7. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* Plaintiff timely filed her charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2018 within 180 days of a discriminatory and/or retaliatory act. She filed her complaint in North Carolina Superior Court within 90 days of her receipt of her Notice of Right to Sue from the EEOC. Copies of the Charge and the Notice of Right to Sue are attached hereto as Exhibit A and Exhibit B.

**STATEMENT OF FACTS**

8. Plaintiff was hired by the Defendant for the role of Assistant II (4 hours per day) at Cox Mill High School ("Cox Mill") in August of 2015. Her job involved a variety of tasks including stocking items, prepping food, and cashiering. After Plaintiff began working at

2

Case 1:20-cv-00335-JEP    Document 15    Filed 06/26/20    Page 2 of 18

Cox Mill, she got a second job working the night shift at Panera Bread. She continued to work for Panera for approximately four years. Prior to being hired by Defendant, Plaintiff worked for a catering business and assisted at several large events and wedding receptions. Plaintiff had experience in food service from her catering job prior to working at Cox Mill. At Panera and while catering, Plaintiff performed well and was never disciplined, given poor evaluations for her work, or terminated for poor performance.

9. Plaintiff performed her job for Defendant well for almost 3 years. Her yearly and midyear evaluations found her at or above standard in all categories, with a few small exceptions, for from 2015 to 2018. Comments on these evaluations emphasized Plaintiff's dedicated work ethic, efficiency, and positive interactions with students.

10. Plaintiff did not see any other Black workers or supervisors during her employment for Defendant. Her supervisors and co-workers were all white or Latino/Latina. Upon information and belief, Plaintiff was the only Black person employed by Defendant for ebvthe duration of her employment.

11. Plaintiff endured verbal abuse by nonblack co-workers from the time she began working as Assistant II and continuing until the end of her employment. White co-workers routinely yelled at Plaintiff (including with expletives like "f--k you") and often called her "stupid" and "b---h."

12. Defendant knew or should have known about the harassment because at some point in 2016, an anonymous letter was submitted to Defendant on Plaintiff's behalf, complaining of the conditions of Plaintiff's work environment.

13. April Lawrence, a white woman who worked with Plaintiff at Cox Mill, easily became

3

frustrated with Plaintiff when they worked together. One day in February of 2016, Plaintiff noticed that another co-worker, Lisa, needed help prepping food, and asked if she could help. Ms. Lawrence noticed this interaction and yelled "you don't need to help her!" at Plaintiff. Ms. Lawrence proceeded to call Plaintiff "stupid" and "b---h" in front of Lisa and another co-worker, Brenda.

14. Although Plaintiff had been verbally harassed at work prior to this incident, Plaintiff chose to report the abuse after this incident because she felt the situation was becoming more volatile. Subsequently, the abuse escalated. A few weeks after reporting the incident, Ms. Lawrence began yelling at Plaintiff because she did not like the way Plaintiff was setting up the bar to be given to the students. Plaintiff did not understand, as she was setting up the bar like it was normally set up. Ms. Lawrence continued to yell and continued to use derogatory and abusive language toward the Plaintiff.

15. Plaintiff's direct supervisor at Cox Mill was SNP Manager Amy Hill, a white woman. When Ms. Hill learned that Plaintiff had reported the verbal harassment from Ms. Lawrence, she began treating Plaintiff coldly and it became very difficult for Plaintiff and Ms. Hill to work together.

16. On or about March 15, 2016, Ms. Hill asked Plaintiff to come into her office to discuss Plaintiff's allegations. During the discussion, Ms. Hill informed Plaintiff that there was an issue with a "black rat" in Ms. Hill's kitchen.

17. Plaintiff was under the impression that Ms. Hill was speaking about an actual black rat. Plaintiff asked Ms. Hill what she could or should do to help her get rid of the black rat. Ms. Hill continued to repeat to Plaintiff that there was a black rat in the kitchen.

18. After a few minutes of Ms. Hill repeating the "black rat" comment, Plaintiff realized that Ms. Hill was referring to Plaintiff as a black rat, due to Plaintiff's race. After the meeting, Plaintiff noticed that Ms. Hill had placed a small toy black rat on her desk where Plaintiff could see it.

19. Every day when Plaintiff worked as a cashier and finished her shift, Ms. Hill required Plaintiff to count the money in the money drawer in Ms. Hill's office at her desk. Other similarly situated employees who were not members of Plaintiff's protected class were not required to count their money in the presence of Ms. Hill.

20. On or about April 29, 2016, Plaintiff met with SNP Director Gayle Buddenbum, a white woman, to discuss the hostile and abusive environment Plaintiff was forced to work in.

21. When Ms. Hill discovered that the Plaintiff had conversed with Ms. Buddenbaum, Ms. Hill requested that the Plaintiff "water down" her written account of the abuse and discriminatory activity she had been subjected to. Plaintiff refused. Soon after her refusal, the Plaintiff noticed that Ms. Hill's treatment of her began to get even worse.

22. Close to the end of the 2015-2016 school year, Plaintiff was transferred to Odell Elementary School for the remainder of the school year. The stated reason for this transfer was that Ms. Hill felt she could no longer work with Plaintiff. Because Odell Elementary School was being demolished and rebuilt at the time, Plaintiff was tasked with packing up the cafeteria and cleaning out the sheds. Plaintiff felt degraded and humiliated because cleaning and preparing for the renovation was not part of Plaintiff's role as Assistant II. She felt that she was being retaliated against due to complaining about the hostile work environment to Ms. Hill.

5

Case 1:20-cv-00335-JEP    Document 15    Filed 06/26/20    Page 5 of 18

23. Upon information and belief, the Defendant failed to reprimand or further disciplined the non-black co-workers who discriminated against and verbally abused the Plaintiff.

24. When the 2016-2017 school year began, Plaintiff was transferred to Winkler Middle School ("Winkler") under SNP Manager Staci Jerrell, a white woman, where she worked primarily at Quick Bites and Fruits.

25. Despite changing schools, Plaintiff experienced verbal abuse from white co-workers, including but not limited to workers named Julie, Susan, and Donna, during the 2016-2017 and 2017-2018 school years.

26. On one occasion shortly after spring break during the 2016-2017 school year, Plaintiff was helping a white co-worker named Susan wrap sandwiches at quick bites (a station in the cafeteria for students to pick up ready-to-eat food). Susan dismissively stated, in front of Ms. Jerrell, something to the effect of Plaintiff "not being needed at Winkler."

27. In September of 2017, Plaintiff noticed that the dirty dishes were overflowing and needed to be washed to make more room, and started cleaning up. Routine cleaning was part of Plaintiff's job. A white co-worker named Donna saw what Plaintiff was doing and told Plaintiff to stop touching the dishes. Plaintiff, confused, stated that she needed to clean the dishes as huge stacks of the dishes were piling up. Donna raised her voice and said "b---h, I said don't touch the d--n dishes." Plaintiff asked Donna not to yell at her. Ms. Jerrell subsequently came back to the dish room and yelled at the Plaintiff, "get your butt in my office," twice. When Plaintiff entered Ms. Jerrell's office, Ms. Jerrell slammed the door and yelled at Plaintiff.

28. On or about October 30, 2018, Plaintiff was called into Field Supervisor Roland

Cabading's office. Roland Cabading, upon information and belief, is a Latino man. Mr. Cabading asked Plaintiff to re-sign some paperwork for her file. Plaintiff was confused because she recalled signing the paperwork at the beginning of the school year. Plaintiff refused to sign the paperwork. In response, Mr. Cabading proceeded to threaten and harass Plaintiff, stating "I am in control; you are not in control. You don't run things here. If you don't sign these papers, you are going to be fired. You can sign these papers, or you can resign." Plaintiff felt threatened and intimidated by Mr. Cabading and politely excused herself, as Mr. Cabading was keeping Plaintiff in his office so long it was interfering with her being able to begin her work on time.

29. The day after this meeting, on October 31, 2018, Plaintiff sent a letter to the HR department regarding the incident.

30. Defendant knew or should have known about the abusive conditions Plaintiff was working under. Plaintiff reported the abuse multiple times, but Defendant never took action to correct it. The verbal abuse often took place in front of other co-workers or supervisors. Plaintiff was singled out for verbal abuse time and time again due to her race. As the only Black employee in the workplace at the time, Plaintiff was targeted by white co-workers and supervisors who intentionally took out their aggression and racial animus out on her.

31. On November 15, 2018, Plaintiff applied for a position as a ten-month Cafeteria Assistant II at Winkler.

20. The position was for 5.5 hours per day and open for applicants currently employed by SNP.

7

21. The position represented a potential increase of 1.5 hours per day for Plaintiff, as at the time she applied for the position, she was working 4 hours per day. Upon information and belief, the position may have also included a raise.

22. On November 28, 2018, Plaintiff submitted her application a second time.

23. On December 11, 2018, Plaintiff was selected for an interview for the position.

24. On December 13, 2018, Plaintiff was interviewed for the position.

25. On December 18, 2018, after her numerous requests for an update, Plaintiff was notified that she had not been selected for the position.

26. Plaintiff is a member of a protected class (Black) and was qualified for the position. A less experienced employee than Plaintiff was selected for the position. The employee selected for the position did not belong to Plaintiff's protected class.

27. After hiring a less qualified and less experienced candidate, referred to as "Pam" for the position, the Defendant informed the Plaintiff that Pam could not do the job. Further demonstrating that the Plaintiff was better qualified, the Defendant asked the Plaintiff to do Pam's job. Despite the Plaintiff performing the duties of the position she applied for, after the Defendant hired someone else, the Defendant never offered the Plaintiff the position or increase in hours nor was she sufficiently compensated for the same.

28. On March 15, 2019, at approximately 1:20 PM, Plaintiff was publicly humiliated in the presence of fellow staff, teachers, and students. A student with special needs came into her line to purchase food. This student would routinely come into Plaintiff's line. Ms. Jerrell told the student to get out of Plaintiff's line. Ms. Jerrell informed Plaintiff, in front of the student, that she was no longer allowed to handle the purchases of the special

8

needs students.

29. In April of 2019, a teacher who taught special needs children came to Plaintiff's line to purchase food on behalf of a special needs student. Plaintiff informed the teacher that she could not handle her purchase because it involved a special needs student. As the teacher left Plaintiff's line she stated to Plaintiff "I don't understand why you could not just ring me up." Plaintiff tried to explain to the teacher that Ms. Jerrell had informed her that she was not allowed to handle any purchases related to special needs students.

30. Plaintiff's employee evaluations for the 2018-2019 school year were extremely poor, in sharp contrast to her previous history of positive evaluations.

31. There is no non-discriminatory reason for the sharp decline in Plaintiff's performance.

32. The sharp decline reflected in Plaintiff's 2018-2019 evaluations was due to the Defendant' racial animus and/or retaliation for Plaintiff's complaints.

33. On June 7, 2019, Defendant informed Plaintiff that she would shortly be terminated.

34. On June 13, 2019, Defendant terminated Plaintiff, with the stated reason of subpar work performance.

35. Plaintiff was actually terminated because of her race and in retaliation for filing charges with the EEOC.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981)**

36. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

37. Plaintiff, a Black woman, is a member of a protected class due to her race.

38. The Defendant had an open position for which Plaintiff applied.

39. Plaintiff was qualified for the position. Despite her skills, experience, and history of positive evaluations, Plaintiff was rejected for the position in favor of a less experienced employee who did not belong to Plaintiff's protected class.

40. The Defendant's reasons for rejecting Plaintiff for the position are false. Defendant's rejection of Plaintiff was motivated wholly or in part by her race.

41. Defendant has discriminated against the Plaintiff with regard to denying Plaintiff a promotion and additional hours, and terminating Plaintiff, in violation of the Civil Rights Act of 1866, 42. U.S.C. § 1981, as amended, and in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, as amended.

42. Defendant's conduct, as described above, was intentional, deliberate, reckless, willful and conducted with disregard for the rights of Plaintiff.

43. By reason of Defendant's discriminatory employment practices, the Plaintiff has experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits and, as such, is entitled to all legal and equitable remedies available under Title VII and § 1981, including compensatory and punitive damages.

44. Defendant has no immunity to this claim and have otherwise waived immunity.

## COUNT II
**(Retaliation in Violation of Section 1981 and Title VII)**

45. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

46. Defendant has retaliated against Plaintiff with regard to termination in violation of 42 U.S.C. § 2000e-3 and 42 U.S.C. § 1981, as amended.

47. Defendant' conduct, as described above, was intentional, deliberate, reckless, willful, and conducted with disregard for the rights of Plaintiff.

48. By reason of Defendant' retaliatory employment practices, the Plaintiff has experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits and, as such, is entitled to all legal and equitable remedies available under Title VII and § 1981, including compensatory and punitive damages.

49. Defendant have no immunity to this claim and have otherwise waived immunity.

## COUNT III
### (Violation of 42 U.S.C. § 1983)

50. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

51. Plaintiff enjoys a substantive liberty interest protected by the Federal Constitution in the equal protection of the laws and is entitled substantive due process prior from her employer, the named Defendant, undertaking any action which might deprive Plaintiff of her natural liberty.

52. As a public employee, Plaintiff enjoys a liberty interest protected by the Federal Constitution in the right to pursue the occupation of her choice, and is entitled to due process prior to her employer, the named Defendant, undertaking any action against her that might stigmatize her and impair her right to pursue her occupation.

53. The Defendant, by and through their individual agents, were required to provide Plaintiff her right to substantive due process before taking an action to threaten her liberty

11

interests in her reputation and choice of occupation.

54. Defendant's failure to adhere to its own express written policies in the Board Policies Manual constitutes arbitrary and capricious state action.

55. Defendant's failure to provide fundamentally fair employment policies, practices, and procedures resulted in arbitrary and capricious adverse acts and decisions against Plaintiff in violation of her Constitutional right to equal protection.

56. Defendant has denied Plaintiff her right to substantive due process afforded by the Constitution of the United States.

57. Defendant's acts were intentional and purposely discriminatory against Plaintiff. Plaintiff was harmed as a direct and proximate result of Defendant's unlawful and discriminatory conduct.

58. As a proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer.

**COUNT IV**
**(Racially Hostile Work Environment in Violation of Title VII)**

59. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

60. As described in greater detail in the foregoing allegations, from approximately August 2015 through at least 2019, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1). Specifically, Defendant subjected Plaintiff to a racially hostile work environment because of her race (Black) while she was employed by Defendant.

61. Defendant condoned the harassment by failing to take adequate remedial action.

12

62. As a consequence of Defendant's conduct, Plaintiff suffered severe emotional distress.

63. Defendant's actions were the proximate cause of Plaintiff's injuries.

## COUNT V
### (Intentional Infliction of Emotional Distress)

64. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

65. Defendant engaged in extreme and outrageous conduct towards Plaintiff by knowingly permitting a hostile work environment.

66. Defendant intended to cause emotional distress or recklessly disregard whether its conduct would cause emotional distress.

67. Defendant's conduct caused Plaintiff severe emotional distress.

## COUNT VI
### (Wrongful Discharge in Violation of Public Policy)

68. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

69. When Plaintiff filed charges with the EEOC, she was exercising her legal right and privilege, and performing an act encouraged by the public policy of the State of North Carolina.

70. Defendant was discharged because she performed an act encouraged by public policy.

## COUNT VII
### (Violation of the North Carolina Equal Employment Practices Act)

70. Plaintiff hereby incorporates and realleges the foregoing allegations as if fully set forth herein.

13

71. The Defendants' treatment of Plaintiff was wrongful, wherein Plaintiff was passed over for an advancement opportunity in favor of a less qualified, non-Black worker, and wherein she was retaliated against for complaining about her working conditions.

72. The Defendants' treatment of Plaintiff is a violation of the strong public policy against discrimination, harassment, and retaliation in the workplace as codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et. seq.* ("NCEEPA").

73. The corresponding conduct by Defendant is a contravention and degradation of public policy, prohibiting the discrimination of the member of a protected class (Black) on the basis of their class status, and prohibiting the discrimination of an employee based on that employee's engaging in protected activity, namely complaining about discrimination and harassment in the workplace.

74. As a direct and proximate result of the Defendants' wrongful and retaliatory conduct, Plaintiff has been damaged.

75. Furthermore, since Defendants engaged in the aforesaid conduct with malice and in willful, wanton, and reckless disregard for the rights of Plaintiff, Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. Grant a permanent injunction enjoining Defendant from maintaining a racially hostile work environment and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an

investigation of unlawful discrimination,

2. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees and which eradicate the effects of its past and present unlawful employment practices,

3. Judgement against Defendant for violations of 42 U.S.C. § 1981 and § 1983, Title VII, and the NCEEPA,

4. Lost wages,

5. Compensatory damages,

6. Punitive damages,

7. All costs and attorneys' fees involved in prosecuting these claims, and

8. For any such other and further relief as this Court deems just and proper.

Respectfully submitted this the 26th day of June, 2020.

**CREWS LAW FIRM, PLLC**

/s/Shawntae Crews
Shawntae Crews
State Bar No. 48704
Attorney for Plaintiff
725 East Trade Street, Suite 200
Charlotte, North Carolina 28202
Phone: (704) 559-9745
Fax: (704) 973-9747
Email: shawntae@thecrewslawfirm.com

15

**THE RHODES FIRM, PLLC**

/s/Khalif J. Rhodes
Khalif J. Rhodes
State Bar No. 41989
Attorney for Plaintiff
122 N. McDowell St.
Charlotte, North Carolina 28204
Phone: (704) 945-8648
Fax: (980) 888-8251
Email: khalif@rhodesfirm.com

16

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-00335-TDS-JEP

| | |
|---|---|
| TUWANNA S. STEVENS,<br><br>**Plaintiff**<br><br>v.<br><br>**CABARRUS COUNTY BOARD OF EDUCATION, CABARRUS COUNTY SCHOOLS**<br><br>**Defendant.** | **PLAINTIFF'S FIRST AMENDED COMPLAINT**<br>**Jury Trial Demanded** |

**CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing Plaintiff's First Amended Complaint was filed with the Clerk of Court using the CM/ECF system and was duly served upon Defendant's attorney by email and by depositing a copy of the same in the U.S. Mail, postage prepaid, addressed as follows:

Elizabeth Troutman
D. Beth Langley
Brooks, Pierce, McLendon
P.O. Box 26000
Greensboro, NC 27420-6000
BLangley@brookspierce.com
ETroutman@brookspierce.com

Dated: June 26, 2020.

17

/s/Shawntae Crews
Shawntae R. Crews
N.C. Bar No: 48704
One of the Attorney's for Plaintiff
725 E. Trade Street. Suite 200
Charlotte, North Carolina 28202
shawntae@thecrewslawfirm.com
(704) 559-9745 (phone)
(704) 973-9747 (fax)


/s/Khalif J.Rhodes
Khalif J. Rhodes
State Bar No. 41989
Attorney for Plaintiff
122 N. McDowell St.
Charlotte, North Carolina 28204
Phone: (704) 945-8648
Fax: (980) 888-8251
Email: khalif@rhodesfirm.com

18