IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TUWANNA STEVENS,            )
                            )
              Plaintiff,    )
                            )
         v.                 )        1:20-cv-00335
                            )
CABARRUS COUNTY BOARD OF    )
EDUCATION, CABARRUS COUNTY  )
SCHOOLS,                    )
                            )
              Defendant.    )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant Cabarrus County Board of Education[1] ("the Board") to dismiss Plaintiff Tuwanna Stevens's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Doc. 17.) For the reasons set forth below, the motion will be granted in part and denied in part.

I.   **BACKGROUND**

     A.   **Factual Background**

     Stevens's complaint, viewed in the light most favorable to her, alleges the following:

     From 2015 to 2019, Stevens — a black woman — worked as an

---

[1] Although Stevens has filed suit against both Cabarrus County Board of Education and Cabarrus County Schools, Cabarrus County Schools is not itself an entity. (Doc. 1 at 1 fn.1.) However, Cabarrus County Board of Education does business as "Cabarrus County Schools." (Id.) As such, the court accepts that Stevens intended to sue only Cabarrus County Board of Education.

Assistant II in the School Nutrition Program (SNP) in the Cabarrus County school district. (Doc. 15 ¶¶ 8-34.) Her primary responsibilities were prepping food, stocking items, and cashiering. (Id. ¶ 8.) Over the course of her employment, Stevens worked at several different schools and allegedly endured repeated verbal abuse from her non-black coworkers and supervisors. (Id. ¶¶ 11-29.)

During the 2015-16 school year, Stevens worked at Cox Mill High School. (Id. ¶ 8.) After Stevens reported harassment by co-workers there, her supervisor, Amy Hill, allegedly told her that there was an issue with a "black rat" in her kitchen. (Id. ¶¶ 14-17.) Stevens understood this to be a reference to her, due to her race. (Id. ¶ 18.)

At some point in 2016, the Board received an anonymous letter to bring attention to Stevens's working conditions at Cox Mill. (Id. ¶ 12.) In late April 2016, Stevens met with the SNP Director, Gayle Buddenbum, to discuss her hostile and abusive work environment. (Id. ¶ 20.) After that meeting, Stevens submitted a written account of the abuse. (See id. ¶ 21.)

Near the end of the 2015-16 school year, Stevens was transferred to Odell Elementary School. (Id. ¶ 22.) There, in preparation for an upcoming renovation, Stevens was required to pack up the cafeteria and clean out sheds. (Id.) She perceived this transfer to be retaliation for her complaining about her

2

working conditions. (Id.)

Stevens was next transferred to Winkler Middle School where she worked from 2016 to 2019. (See id. ¶¶ 24-34.) At Winkler, Stevens continued to experience verbal abuse from her white coworkers and her new supervisor, Staci Jerrell. (Id.) At least one incident of verbal abuse was reported to the Human Resources Department. (Id. ¶¶ 28-29.)

On November 15, 2018, Stevens applied for a position as a Cafeteria Assistant II at Winkler, a position that provided increased hours and potentially included a raise. (Id. ¶¶ 31, 20a, 21a.)[2] Stevens submitted a second application for the position on November 28, 2018. (Id. ¶ 22a.) On December 11, 2018, she was selected for an interview and was subsequently interviewed two days later. (Id. ¶¶ 23a, 24a.) On December 18, 2018, she learned that she was not selected. (Id. ¶ 25a.) Instead, a less qualified, non-black candidate received the position. (Id. ¶¶ 26a, 27a.) Later, when that candidate was unable to do the job, Stevens was asked to take on that job's responsibilities. (Id. ¶ 27a.) However, she was never offered the position or given the associated increase in hours or wages. (Id.)

Between 2015 and 2018, Stevens's employee evaluations were

---

[2] Due to a Word processing error in Stevens's amended complaint, paragraphs numbered 20-31 repeat. (See Doc. 15; Doc. 22 at 1 fn.1.) To reduce confusion, the court refers to the repeating paragraphs as 20a-31a.

3

mostly positive. (Id. ¶ 9.) However, for the 2018-19 school year they were extremely poor. (Id. ¶¶ 30a-32.) On June 7, 2019, she was told she would shortly be terminated and was ultimately terminated on June 13, 2019 for subpar work performance. (Id. ¶¶ 33, 34.)

   **B.  Procedural History**

   From 2018 to 2019, Stevens filed six charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed five of the charges and gave Stevens notice of her right to sue within ninety days.

   Stevens's first charge was filed on September 6, 2018 ("the first charge") and alleged that she experienced discrimination on the basis of race and religion. (Doc. 17-1.) The charge indicated that she was denied a promotion in 2017 and that she was subjected to less favorable treatment in comparison to her co-workers. (Id.) On September 26, 2018, the EEOC dismissed this charge and gave Stevens notice of her right to bring suit on the claim within ninety days. (Id.) Her second charge was filed on October 30, 2018 ("the second charge") and alleged that she was retaliated against for filing the first charge, although the charge did not detail the alleged retaliation. (Doc. 17-2.) The EEOC dismissed this charge on November 6, 2018, and again gave Stevens notice of her right to bring suit within ninety days. (Id.) Stevens filed similar charges alleging retaliation on February 19, June 5, and

4

June 13, 2019 ("the fourth charge," "the fifth charge," and "the sixth charge," respectively). (Docs. 17-4, 17-5, 17-6.) The EEOC dismissed the fourth charge on July 2, 2019, and dismissed the fifth and sixth charges on September 18, 2019. (Id.) With each dismissal, the EEOC gave Stevens notice of her right to bring suit within ninety days. (Id.)

In Stevens's third charge, filed on December 11, 2018 ("the third charge"), Stevens alleged retaliation and discrimination based on race. (Doc. 17-3.) Stevens indicated that she continued to suffer harassment and a hostile work environment following the filing of her first two charges. (Id.) She also reported that she had not been selected for the Cafeteria Assistant II position and that a less-qualified, non-black applicant had been chosen. (Id.) Based on these allegations, the EEOC found reasonable cause to conclude that Stevens was subjected to race discrimination and retaliation, and the EEOC attempted to conciliate the case as required by Title VII. (Id.) When conciliation ultimately failed, the EEOC gave Stevens, in a letter dated January 16, 2020, notice of her right to bring suit on the claim within ninety days. (Id.)

On March 13, 2020, Stevens filed this lawsuit in Superior Court in Cabarrus County for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and the North Carolina Equal Employment Practices Act ("EEPA"), N.C. Gen. Stat. § 143-422.1 et seq. (Doc. 3.) The Board timely removed the action

to this court, after which Stevens filed an amended complaint, on June 26, 2020, in which she brings seven causes of action against the Board: (1) violation of Title VII and 42 U.S.C. § 1981 based on failure to promote and discriminatory termination; (2) violation of Title VII and § 1981 based on retaliatory discharge; (3) violation of 42 U.S.C. § 1983 for denials of her substantive due process rights; (4) violation of Title VII based on a racially hostile work environment; (5) intentional infliction of emotional distress; (6) wrongful discharge in violation of public policy; and (7) violation of the EEPA. (Doc. 15 ¶¶ 36–75.) The Board has moved to dismiss each of these claims. (Doc. 17.) The motion is now fully briefed and ready for resolution.[3] (See Docs. 18, 22, 23.)

---

[3] Although the Board has moved to dismiss all of Stevens's claims, Stevens's opposition responds only to arguments pertaining to her Title VII hostile work environment claim, her § 1983 claim, and the Board's waiver of governmental immunity in relation to her state law claims. (See Doc. 22.) Per Local Rule 7.3(k), "[t]he failure to file a brief or response within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect." M.D.N.C. L.R. 7.3(k). Local Rule 7.2(a) requires that response briefs contain an "argument, which shall refer to all statutes, rules and authorities relied upon." Id. 7.2(a). The court has construed these rules to apply to unresponded-to arguments as well. See Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) ("In Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address Defendants'[] motion concerning his hostile work environment claim. By failing to respond, Plaintiff concedes that he has not stated a hostile work environment claim."); Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV00918, 2010 WL 1667285, at *7–8 (M.D.N.C. Apr. 23, 2010) (collecting cases). However, the Fourth Circuit requires substantive review of even unopposed motions to dismiss. See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [the plaintiffs] did not challenge the motions to dismiss, we note that

6

## II.  ANALYSIS

### A.  Federal Claims

Stevens brings four federal causes of action based on violations of Title VII, § 1981, and § 1983.  The Board has moved to dismiss each pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

#### 1.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn

---

the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.").  As such, the court substantively reviews each of Stevens's claims to determine whether dismissal is appropriate.

7

in the plaintiff's favor.  <u>Ibarra v. United States</u>, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegation 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" <u>Sauers v. Winston-Salem/Forsyth Cnty. Bd. Of Educ.</u>, 179 F. Supp. 3d. 544, 555 (M.D.N.C. 2016) (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 555).  "[T]he complaint must 'state[] a plausible claim for relief' that permit[s] the court to infer more than the mere possibility of misconduct based upon 'its judicial experience and common sense.'" <u>Coleman v. Md. Ct. App.</u>, 626 F.3d 187, 190 (4th Cir. 2010) (alterations in original) (quoting <u>Iqbal</u>, 556 U.S. at 679).  Thus, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  In reviewing a Rule 12(b)(6) motion, the court may "consider documents attached to the complaint, <u>see</u> Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." <u>Philips v. Pitt Cnty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009).

### 2.  Section 1981 and 1983 claims

Stevens brings claims for failure to promote, discriminatory termination, and retaliatory discharge pursuant to 42 U.S.C.

8

§ 1981.[4]  She also brings a claim for denial of her substantive due process rights in violation of 42 U.S.C. § 1983.

### a.  Section 1981 claims against municipalities

As a threshold matter, it must be determined whether Stevens's § 1981 claims may be considered on the merits.  The Board correctly points out that there is no freestanding claim against a municipal employer, such as the Board, under § 1981.  White v. Gaston Cnty. Bd. of Educ., No. 316CV00552MOCDSC, 2017 WL 220134, at *4–5 (W.D.N.C. Jan. 18, 2017) (citing Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 771 (1989)).  However, this alone is insufficient to warrant dismissal.  "[W]hen suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'"  Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (quoting Jett, 491 U.S. at 733).  As such, for Stevens to recover against the Board for her § 1981 claims, she must properly establish municipal liability under § 1983.  See also Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011) (reviewing plaintiffs' § 1981 claim against a municipality for satisfaction of the requirements for liability under § 1983).

### b.  Municipal liability

In enacting § 1983, Congress did not intend to impose

---

[4] Stevens brings similar claims under Title VII, which are addressed infra.

liability on a municipality for a violation of a plaintiff's constitutional rights unless deliberate action attributable to the municipality itself was the "moving force" behind the plaintiff's deprivation. Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397 (1997) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978)). As such, a plaintiff must prove two essential elements to establish liability under § 1983: "(1) that the defendant[] acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional right as a result of that action." Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004) (citing Gomez v. Toledo, 446 U.S. 635 (1980)).

Under the "color of state law" requirement, a § 1983 plaintiff alleging § 1981 race discrimination must adequately plead and ultimately prove three elements: "(1) the existence of an official policy or custom (2) that is fairly attributable to the local government (3) that proximately caused the underlying § 1981 race discrimination." Id. (citing Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)); see also Monell, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). As such, municipalities cannot be held liable under § 1983 on a theory of respondeat superior. Monell,

10

436 U.S. at 691. An official policy or custom giving rise to municipal liability may be created either "(1) through an express policy . . . ; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted). Generally, only a final policymaker can create official custom or policy on behalf of an entity. See Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). This sort of policymaking refers to the "authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987). The existence of such authority is determined by state law. City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) (plurality opinion); Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000).

Under North Carolina law, a school board is the final policymaker with regard to the employment and discharge of school employees. See N.C. Gen. Stat. § 115C-45(c) (2020) ("An appeal shall lie to the local board of education from any final administrative decision in . . . the terms of conditions of

11

employment or employment status of a school employee."); see also Barrett v. Bd. of Educ. of Johnston Cnty., N.C., 13 F. Supp. 3d 502, 511 (E.D.N.C. 2014) ("North Carolina vests the Board itself with the authority to make final policy for the local school district."); Marshall v. Frederick, No. 5:19-CV-69-BO, 2019 WL 3822321, at *3 (E.D.N.C. Aug. 14, 2019) ("In North Carolina, school boards 'have general control and supervision of all matters pertaining to the public schools.'" (quoting N.C. Gen. Stat. § 115C-36)).

Stevens acknowledges that her claims do not arise from actions taken directly by the Board. (See, e.g., Doc. 22 at 8-9 ("Plaintiff has alleged that multiple *co-workers and supervisors* created a hostile work environment . . . . *Co-workers* used abusive language toward Plaintiff, and *supervisors* ignored Plaintiff's complaints or inflicted abuse upon Plaintiff themselves." (emphasis added)).) As such, because only final policymakers can create official custom or policy on behalf of the entity, the Board can be liable for the actions of Stevens's coworkers and supervisors only if it knew of their improper conduct and ratified it in some way such that its action or inaction constituted an official policy or custom. See Love-Lane, 355 F.3d at 782.

In her opposition,[5] Stevens argues that municipal liability

---

[5] The complaint itself does not identify any official policy or custom that allegedly led to the deprivation of her rights. Although the

12

is proper on the basis of the Board's deliberate indifference to the need for racial sensitivity training, inherent bias training, and other training measures. (See Doc. 22 at 9–10.) The complaint itself contains no allegations in support of Stevens's failure to train claim. See JTH Tax, Inc. v. Williams, 310 F. Supp. 3d 648, 653 (E.D. Va. 2018) ("[T]he court need not consider new allegations or new facts that were available to the plaintiff when it filed the complaint, but were only introduced in an opposition to a defendant's motion to dismiss." (internal quotation marks omitted)); see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008).[6] Regardless, the claim does not support municipal liability here.

Where an alleged constitutional deprivation results from municipal inaction, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of Cnty. Comm'rs, 520 U.S. at 405. To state an actionable § 1983 claim against a municipality based on failure to train, a plaintiff must

_____

complaint states — in relation to Stevens's § 1983 claim — that the Board failed to "adhere to its own express written policies" (see Doc. 15 ¶ 54), Stevens does not specify any policy that the Board failed to adhere to, nor does she return to this argument in response to the Board's present motion.

[6] While the Fourth Circuit does not ordinarily accord precedential value to its unpublished opinions, it has noted that they "are entitled only to the weight they generate by the persuasiveness of their reasoning," and they are cited herein on that basis. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted).

13

allege facts that plausibly suggest the municipality was more than merely negligent in its training.[7] See Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987). "Only where a failure to train reflects a deliberate or conscious choice by a municipality . . . can a city be liable for such a failure under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (internal quotation marks omitted). Deliberate indifference to the need for specific training almost always requires a showing of a "pattern of constitutional violations," but in very limited circumstances can be established where the violation was "a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." Bd. of Cnty. Comm'rs, 520 U.S. at 402. Additionally, for liability to attach, there must be a "direct causal link" between "a specific deficiency in training and the particular violation alleged." Buffington v. Balt. Cnty., Md., 913 F.2d 113, 122 (4th Cir. 1990). Ultimately, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).

---

[7] While failure to train claims typically arise in the context of law enforcement, courts have applied the same framework to such claims in the context of employment discrimination. See, e.g., Sledge v. Dist. of Columbia, 63 F. Supp. 3d 1, 28 (D.D.C. 2014); Jackson v. City of Centreville, 899 F. Supp. 2d 1209, 1220 (N.D. Ala. 2012); Frierson v. Atlanta Indep. Sch. Sys., No. 1:10-CV-3826-ODE-LTW, 2013 WL 12328447, at *13-14 (N.D. Ga. Aug. 20, 2013), report and recommendation adopted in part, rejected in part, 22 F. Supp. 3d 1264 (N.D. Ga. 2014).

14

Here, Stevens's complaint contains no facts that suggest the Board acted deliberately in failing to impose additional training requirements in response to Stevens's claims. First, Stevens does not allege a pattern of constitutional violations that reflect the Board's conscious choice to disregard racial discrimination and retaliation on the part of school employees. Although Stevens outlines a number of instances of discrimination that she experienced personally, she has not indicated that any other employee experienced similar harassment such that her experiences were part of a broader pattern of constitutional violations. Further, she has not alleged that the discrimination she experienced was a highly predictable consequence the Board's failure to provide employees with greater racial sensitivity and related trainings.

Second, Stevens has not alleged facts indicating that the Board was actually aware of the discrimination she faced at Winkler. Although she indicates that she reported multiple instances of harassment to a supervisor or the HR Department, she does not claim that she contacted the Board or otherwise initiated the Board's appeal procedures to have her complaints reviewed. She also does not indicate that any person with whom she discussed her complaints had an obligation to, or actually did, inform the Board of those complaints. Nor does she indicate that she, her coworkers, or her supervisors had any interactions with the Board

15

at all.[8]  Further, although Stevens filed multiple charges with the EEOC, none of the charges was directed to the Board.  For each charge, Stevens listed her employer as "Cabarrus County School" or "Cabarrus County School Nutrition Program."  (See Docs. 17-1, 17-2, 17-3, 17-4, 17-5, 17-6.)  Rather than providing the address and phone number of the Board, each charge listed the contact information of the district's auxiliary services.  (See id.)  All notices from the EEOC in response to those charges were sent to the Director of Human Resources, not the Board.  (See id.)

For these reasons, Stevens has failed to allege facts to support a plausible claim that the Board was deliberately indifferent to maintain municipal liability under § 1983.  The Board's motion to dismiss Stevens's § 1981 and § 1983 claims will therefore be granted.

### 3.  Title VII claims

The Board moves to dismiss all Title VII claims as time-barred, alleging that Stevens failed to file suit within the ninety-day statutory filing period.[9]  As the ninety-day filing

---

[8] Although Stevens alleges that an anonymous letter was sent to the Board in 2016, this letter pertained to her working conditions at Cox Mill High School.  After that letter was sent, Stevens met with the SNP Director and was ultimately transferred to Winkler.  Since being transferred to Winkler in late 2016 — the school where Stevens's failure to promote, discriminatory termination, and retaliatory discharge claims ultimately arose — Stevens has not indicated that she or anyone else has had contact with the Board.

[9] Unlike § 1983 plaintiffs, Title VII plaintiffs may recover on a theory of respondeat superior.  See Gebser v. Lago Vista Indep. Sch. Dist., 524

16

requirement under 42 U.S.C. § 2000e "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," the Board's motion to dismiss these claims is properly considered pursuant to Federal Rule 12(b)(6). <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982); <u>see also</u> <u>Laber v. Harvey</u>, 438 F.3d 404, 434 (4th Cir. 2006).

### a. Timeliness of suit

The Board alleges that Stevens filed suit outside the ninety-day statutory filing period for each of her six EEOC charges. In relation to five of her six charges, as Stevens appears to acknowledge, the Board is correct. (<u>See</u> Doc. 22 at 7 ("Although the Complaint was only filed in time to meet the timing requirement for Charge 3 . . . .").) Stevens initially filed her lawsuit in the Superior Court division of Cabarrus County on March 13, 2020. In order for the lawsuit to be timely in relation to her Title VII claims, she must have received notice of the right to sue, at the latest, ninety days before the filing of that action — that is, on or after December 14, 2019. Stevens received notice on her first

---

U.S. 274, 283 (1998). As such, Stevens's failure to allege facts indicating that the discrimination she endured was pursuant to an "official policy or custom" — which is fatal to her §§ 1981 and 1983 claims — does not bar her Title VII claims. "Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII," would have known about the harassment. <u>Ocheltree v. Scollon Prods., Inc.</u>, 335 F.3d 325, 334 (4th Cir. 2003) (internal quotation marks and punctuation omitted).

17

two EEOC charges on September 26, 2018 and November 2, 2018. She received notice on her last three EEOC charges on July 2, 2019 and September 18, 2019. As Stevens received each of these notices prior to December 14, 2019, claims based on these charges are untimely.

In relation to Stevens's third charge, however, suit was timely filed. Stevens received notice of her right to sue on January 16, 2020, well within the ninety-day statutory filing period. As such, suit on this charge was timely when Stevens filed her original complaint.

The Board argues, however, that suit on claims arising from Stevens's third charge is untimely because Stevens did not bring suit on the third charge until she filed her amended complaint on June 26, 2020, which was outside the statutory filing period. (Doc. 18 at 12.) In response, Steven argues that, pursuant to Federal Rule of Civil Procedure 15(c), the amended complaint relates back to the date of the filing of the original complaint. (Doc. 22 at 6-8.) The Board replies that the doctrine of relation-back should not apply because the facts underlying the third EEOC charge did not appear in her original complaint. (Doc. 23 at 1-4.)

Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the

18

conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c). To relate back, there must be a "factual nexus between the amendment and the original complaint." Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983), aff'd, 468 U.S. 42 (1984). "[I]f there is some factual nexus[,] an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." Id. When a party "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back." Goodman v. Praxair, Inc., 494 F.3d 458, 471 (4th Cir. 2007).

In this case, there is a factual nexus between the Title VII claims of the original complaint and the Title VII claims of the amended complaint. Specifically, the broad facts underlying the claims brought in the original and amended complaints are the same in that they revolve around Stevens's employment in the SNP and the discrimination she experienced therein. Although the third charge revolves around her December 2018 failure to promote claim and the original complaint did not detail this event, the third charge was incorporated by reference in the original complaint. (See Doc. 3 ¶ 68 ("[Stevens] filed subsequent charges with the EEOC in November 2018, December 2018, February 2019, and May 2019,

19

due to [the Board's] continued discrimination of [Stevens] based on race and retaliation.").) Because the amended complaint details the third charge and that charge was referred to and arises from the same series of occurrences as those alleged in the original complaint, there is sufficient factual nexus between the original and amended complaints to apply the doctrine of relation-back such that suit on the third charge is timely.

In applying the doctrine of relation-back, the Board will suffer no undue prejudice in defending against the amended complaint. The Board had notice of the failure to promote claim brought in the amended complaint because Stevens filed the third charge before initiating this lawsuit and incorporated that charge by reference in her original complaint. See Gratten, 710 F.2d at 163 (finding that defendants were not prejudiced by new claims in an amended complaint because plaintiffs "complained of race and sex discrimination in complaints filed with the EEOC . . . [and thus] defendants were bound to have known of" and anticipated those claims based on the facts alleged in the original complaint). Consequently, the amended complaint relates back to the date of the filing of the original complaint, and Stevens's lawsuit on the third charge was timely.

**b. Scope of timely charge**

The Board contends that even if the lawsuit on the third charge is timely, Stevens's claims — particularly her hostile work

20

environment claim — were not raised in the charge and are therefore
not properly before the court. (Doc. 18 at 12–13; Doc. 23 at 4–
7.) Steven responds the third charge sufficiently alleges that
she was subjected to a hostile work environment. (Doc. 22 at 6–
7.)

To bring suit under Title VII, a claimant must first exhaust
her administrative remedies by filing an appropriate charge with
the EEOC. See Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147,
148 (4th Cir. 1999). "The allegations contained in the
administrative charge . . . generally operate to limit the scope
of any subsequent judicial complaint," Evans v. Techs.
Applications & Serv. Co., 80 F.3d 954, 962–63 (4th Cir. 1996), in
that "factual allegations made in formal litigation must
correspond to those set forth in the administrative charge," Chacko
v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). A plaintiff
cannot raise claims under Title VII that "exceed the scope of the
EEOC charge and any charges that would naturally have arisen from
an investigation thereof." Dennis, 55 F.3d at 156; see also
Evans, 80 F.3d at 963 ("Only those discrimination claims stated in
the initial charge, those reasonably related to the original
complaint, and those developed by reasonable investigation of the
original complaint may be maintained in a subsequent Title VII
lawsuit.").

Although courts construe administrative charges liberally,

21

"[i]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will [] be procedurally barred." Chacko, 429 F.3d at 508 (citing Taylor v. Va. Union Univ., 193 F.3d 219, 239 (4th Cir. 1999) (en banc)). A charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Keener v. Universal Cos., 128 F. Supp. 3d 902, 912 (M.D.N.C. 2015) (quoting Chacko, 429 F.3d at 508). Further, a plaintiff cannot bring suit on a claim under Title VII where the "charge[] reference[s] different time frames, actors, and discriminatory conduct than the central factual allegations in h[er] formal suit," id. (quoting Chacko, 429 F.3d at 508) (alterations in original), or the charge "alleges one type of discrimination — such as discriminatory failure to promote — and the claim encompasses another type — such as discrimination in pay and benefits," Chacko, 429 F.3d at 509. Similarly, an administrative charge that alleges a discrete discriminatory act is considered insufficient to support suit where the plaintiff subsequently alleges a broader pattern of misconduct. Id. (citing Dennis, 55 F.3d at 153).

Here, Stevens's third EEOC charge states:[10]

---

[10] The court replicates the dates as stated in the text of the third charge. (See Doc. 17-3.) In response to this charge, the EEOC provided alternate dates. Specifically, the EEOC indicated that Stevens was selected for an interview on December 11, 2018, interviewed on December 13, 2018, and was notified that she did not receive the position on

22

> Since filing [the first and second] EEOC Charges . . .
> I have continued to be harassed and subjected to a
> hostile work environment by management and employees.
> On November 15 & 28, 2018, I applied for a 5.5-hour
> position. On November 19 & 21, 2018, I asked my manager,
> Stacy Jerrell (White), if she had heard if a selection
> had been made. Both times Ms. Jerrell replied no.
>
> However, around November 7, 2018, I noticed a less
> experienced employee (Hispanic) being trained for the
> position, and is currently receiving more hours than me.
> Upon knowledge and belief, other employees (non-Black)
> are called in for extra hours but I am not.
>
> I believe I have been discriminated against in violation
> of Title VII of the Civil Rights Act of 1964, as amended,
> based on race (Black), and subjected to retaliation for
> participating in a protected activity.

(Doc. 17-3 at 1.) On the charge form, Stevens indicated that she
was alleging discrimination based both on race and retaliation.
She listed the incident dates as November 7, 2018 to December 11,
2018, but she also indicated that the charge represented a
continuing action. (Id.)

This charge sufficiently alleges facts to support Stevens's
failure to promote claim. The charge identified at least one
involved party — Jerrell — and described the actions complained of
— the failure to promote her, the decision to promote a less-
experienced employee instead, and the provision of more hours to
other employees. The Board appears to accept as much. (See Doc.
23 at 5 ("All of the facts described in the charge relate to a

_____

December 18, 2018. (Id.) In discussing the factual allegations in
Section I.A. above, the court provides the dates alleged in the complaint
which are consistent with those provided by the EEOC. (See Doc. 15
¶¶ 23–25.)

23

discrete employment action — that is, a job position for which Plaintiff . . . was not selected.").) Therefore, the court accepts that Stevens has properly exhausted her failure to promote claim.

The Board argues, however, that Stevens's third charge does not properly exhaust her hostile work environment claim.[11] (Doc. 18 at 12–13; Doc. 23 at 4–7.) In response, Stevens argues that the third charge adequately alleges a hostile work environment claim and that the remaining five charges provide "background evidence" in support of this claim. (Doc. 22 at 6–8.)

"Hostile environment claims are different in kind from discrete acts" in that, by their very nature, such claims involve repeated conduct. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). A hostile work environment is one in which "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

---

[11] The Board does not offer any argument regarding the retaliation claim within Stevens's third charge or how that claim relates to Stevens's current Title VII action for retaliatory discharge. However, the retaliatory discharge claim brought in the amended complaint is distinct from the retaliation claimed in the third charge. Further, a plaintiff may generally raise a retaliation claim based on the filing of a timely EEOC charge for the first time in federal court, as long as the claim is "related to" and "gr[ew] out" of the EEOC charge while the charge remained pending. Brown v. Runyon, 139 F.3d 888 (4th Cir. 1998) (citing Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992)); see also Jones v. Calvert Grp., Ltd., 551 F.3d 297, 302 (4th Cir. 2009). Because Stevens alleges that she was discharged in retaliation for filing her EEOC charges and the discharge occurred during the pendency of the third charge, non-exhaustion does not bar her retaliatory discharge claim in the present action. Therefore, the court considers, infra, whether Stevens has sufficiently stated a claim for retaliation under Title VII to survive dismissal.

24

conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Though the court may consider the "entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period," there still must be some "act contributing to that hostile environment [that] takes place within the statutory time period." <u>Morgan</u>, 536 U.S. at 105. Otherwise, "potential Title VII plaintiffs could evade [the limitations] requirements simply by seeking additional Notices of Right to Sue whenever they pleased," rendering the ninety-day limitations period "meaningless." <u>Howard v. Am. Inst. of Certified Pub. Accts.</u>, No. 1:08CV483, 2008 WL 5232794, at *3 (M.D.N.C. Dec. 12, 2008), <u>report and recommendation adopted</u>, No. 1:08CV483, 2009 WL 1173017 (M.D.N.C. Apr. 27, 2009) (quoting <u>Lo v. Pan Am. World Airways, Inc.</u>, 787 F.2d 827, 828 (2d Cir. 1986)).

Here, Stevens's third charge does not provide any factual detail underpinning her hostile work environment claim. The charge does not indicate any party, action, or practice that contributed to a hostile work environment. Rather, the third charge indicates merely that she was "harassed and subjected to a hostile work environment by management and employees." The remaining allegations in the third charge relate to her discrete failure to promote claim. Based on the single vague allegation in the third

25

charge, the EEOC would not have been aware of or able to investigate the harassing behavior that contributed to the claimed hostile work environment.

It is true that Stevens's third charge references her first and second charges, and those earlier charges may shed light on the discriminatory acts that created the hostile work environment mentioned in the third charge. However, while Stevens may use prior, time-barred charges as background evidence in support of a timely hostile work environment claim, time-barred charges cannot be used to support a hostile work environment claim where the timely charge itself does not sufficiently allege at least one contributing act within the statutory filing period. See Morgan, 536 U.S. at 105, 113; see also Birch v. Peters, 25 F. App'x 122, 123 (4th Cir. 2001) ("A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII . . . generally forfeits her right to pursue her claims.") (citing Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149–51 (1984)).

Because Stevens's third charge does not sufficiently allege an act contributing to a hostile work environment, Stevens cannot rely on untimely charges to support that claim. Her present action for hostile work environment is beyond the scope of the third charge, and the Board's motion to dismiss Stevens's Title VII hostile work environment claim will therefore be granted.

26

### c.  Sufficiency of pleadings

The Board argues that even if Stevens's third charge was timely and the claims that are within its scope are properly before the court, Stevens has failed to sufficiently state her causes of action to survive dismissal under Rule 12(b)(6).  Having found that the scope of the third charge is limited to Stevens's failure to promote and related retaliation claims, the court reviews only these claims for sufficiency.

### i.  Failure to promote

Stevens contends the Board violated Title VII, 42 U.S.C. § 2000e-2, because she was not promoted in November/December 2018 in part due to her race.  Stevens does not offer direct evidence of discrimination.  Rather, she indicates that she applied for a promotion and received an interview, but a less-experienced, non-black candidate received the promotion instead.

In a case alleging discriminatory failure to promote, a plaintiff must prove that she (1) is a member of a protected class; (2) applied for a position; (3) was qualified for the position; and (4) was rejected under circumstances giving rise to an inference of unlawful discrimination.  Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995).  At the present stage, Stevens need not plead a prima facie case to survive dismissal.  Bing v. Brivo Sys., LLC, 959 F.3d 605, 616-17 (4th Cir. 2020).  Rather, she must plausibly state a violation of Title

27

VII "above a speculative level." Id.

Here, Stevens has plausibly pleaded her claim for discriminatory failure to promote. She is a member of a protected class, applied for a promotion in November 2018, alleges she was qualified for the position, and was not awarded the position. Instead, an allegedly less-qualified employee who was not a member of her protected class received the position, giving rise to an inference of unlawful discrimination. McCaskey v. Henry, 461 F. App'x 268, 270 (4th Cir. 2012) ("A showing that a member outside of the protected class received a promotion instead of the plaintiff is sufficient to create an inference of discrimination.") (citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994)). This is sufficient to state a claim of discriminatory failure to promote under Title VII and, as such, the Board's motion to dismiss this claim will be denied.

### ii. Retaliatory discharge

Stevens next contends that the Board violated Title VII by discharging her in retaliation for filing charges of discrimination with the EEOC.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (2020). Generally speaking, to state a claim for retaliatory discharge under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took an adverse action against her, and (3) a causal connection existed between the protected activity and the adverse action. Carter, 33 F.3d at 460; Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). In the context of retaliation, "adverse action" encompasses actions "that a reasonable employee would have found . . . materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); see also Laird v. Fairfax Cnty., Va., 978 F.3d 887, 893 (4th Cir. 2020) ("[T]he harm must be a *significant detriment*, not relatively insubstantial or trivial." (emphasis in original) (internal quotation marks omitted)). Whether an action is materially adverse is context-specific. Burlington N., 548 U.S. at 69. An employer's action that "may make little difference to many workers, but may matter enormously" to a particular plaintiff, may constitute a materially adverse action. Id.

Here, Stevens has sufficiently alleged facts to support the

29

first two requirements of a retaliation claim. First, her filing of charges with the EEOC constitutes a protected activity under Title VII. Jefferies v. UNC Reg'l Physicians Pediatrics, 392 F. Supp. 3d 620, 629 (M.D.N.C. 2019). Second, Stevens suffered an adverse action, at least in that she was terminated in June 2019. Burlington N., 548 U.S. at 68. Further, taking the allegations in the light most favorable to Stevens, her incorporated time-barred charges indicate she may have been subjected to additional adverse actions. See Morgan, 536 U.S. at 113–14 (allowing time-barred charges to be brought as background evidence in support of a timely charge of discrimination). Per the fourth charge, in February 2019, Stevens was forced to substitute at other schools throughout the district while other similarly-situated employees were not. (See Doc. 17-4.) Per the fifth charge, on May 30, 2019, Stevens was allegedly subjected to an undeserved negative employee evaluation. (See Doc. 17-5.) Taken together, Stevens has plausibly alleged that she was subjected to a materially adverse action within the meaning of Title VII in the retaliation context.

To allege the third required element of a retaliation claim — causal connection — Stevens must show (1) that the protected activity preceded the materially adverse action and (2) that the employer knew the employee engaged in a protected activity. See Causey, 162 F.3d at 803-04 (stating that "[k]nowledge of a charge is essential to a retaliation claim"); see also Dowe v. Total

30

Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). At the pleading stage, however, a plaintiff may indicate causation by demonstrating that there is a close temporal proximity between the adverse action and the plaintiff's protected activity. Carter, 33 F.3d at 460 (discussing that close temporal proximity can be "strongly suggestive of retaliatory motive and thus indirect proof of causation"). Although the Fourth Circuit has not adopted "a bright temporal line," a lapse of three or four months "between the protected activities and discharge" has been considered "'too long to establish a causal connection by temporal proximity alone.'" Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (quoting Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006)). Where temporal proximity between a protected activity and an alleged adverse action is absent, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Here, Stevens's third charge was filed on December 11, 2018. (See Doc. 17-3.) As over seven months elapsed between the filing of the charge and Stevens's termination on June 13, 2019, the

31

temporal proximity of this charge to her ultimate discharge is not alone suggestive of a causal connection. However, as discussed above, the third charge may be considered in light of Stevens's subsequently-filed time-barred charges. See Morgan, 536 U.S. at 113. Through these charges, Stevens has plausibly alleged a recurring retaliatory animus during the intervening period to support an inference of causation at this stage. As indicated in the fourth charge, Stevens alleges she was subjected to an adverse action only two months after the filing of the third charge in that she was forced to work in other schools. Then, three months after that, she claims she was subjected to an undeserved negative employee evaluation. At this early stage, these occurrences are adequately close in temporal proximity to avoid a motion to dismiss.

Therefore, Stevens has plausibly stated a claim for retaliatory discharge in violation of Title VII such that the Board's motion to dismiss will be denied.

**B. State law claims**

Stevens next brings claims under North Carolina state law for intentional infliction of emotional distress, wrongful discharge in violation of public policy, and violation of the North Carolina EEPA. In response, the Board asserts governmental immunity and moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). (Doc. 18.)

32

## 1. Legal standard

In cases where state sovereign or governmental immunity is asserted, "[a] motion to dismiss based on sovereign immunity is a jurisdictional issue." Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 268 (M.D.N.C. 2015) (citing M. Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 730 S.E.2d 254, 257 (N.C. Ct. App. 2012)). When a state supreme court "has spoken neither directly nor indirectly on the particular issue" at hand, a federal court must predict how that court would rule "if presented with the issue." See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005) (citation omitted). In such cases, the decisions of the state court of appeals are the "next best indicia" of how the state supreme court would rule. See Priv. Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002).

Although the Supreme Court of North Carolina has not addressed the issue, the North Carolina Court of Appeals has indicated that "the general rule is that sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction." Green v. Kearney, 690 S.E.2d 755, 760 (N.C. Ct. App. 2010); see also Meherrin Indian Tribe v. Lewis, 677 S.E.2d 203, 207 (N.C. Ct. App. 2009) ("An appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction."); Aliksa v. N.C. R.R. Co., No.

33

1:17CV428, 2018 WL 3466948, at *1 (M.D.N.C. July 18, 2018); but see Johnson v. North Carolina, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012) ("[T]here is authority suggesting that motions to dismiss based upon sovereign immunity may be properly granted pursuant to Rule 12(b)(1) as opposed to 12(b)(2)."). Accordingly, this court will consider the Board's motion to dismiss on the basis of governmental immunity pursuant to Federal Rule of Civil Procedure 12(b)(2).[12]

Under Rule 12(b)(2), plaintiffs must establish personal jurisdiction by a preponderance of the evidence. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." Id. In deciding whether the plaintiff has made a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); see also Carefirst of Md., 334 F.3d at 396. The court may consider supporting affidavits in making this determination. See Universal Leather,

_____

[12] As this court has previously noted, however, whether consideration is made pursuant to Rule 12(b)(1) or (b)(2) appears to have no impact on the method of review. See Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 524 n.8 (M.D.N.C. 2008).

LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).

## 2. Waiver of governmental immunity

In North Carolina, "[a] county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its immunity from tort liability pursuant to statutory authority." Overcash v. Statesville City Bd. of Educ., 348 S.E.2d 524, 526 (N.C. Ct. App. 1986). Pursuant to North Carolina General Statute § 115C-42, securing liability insurance is "the exclusive means for a local board of education to waive immunity." Frye v. Brunswick Cnty. Bd. of Educ., 612 F. Supp. 2d 694, 702 (E.D.N.C. 2009) (citing N.C. Gen. Stat. § 115C-42). North Carolina courts strictly construe this statute against waiver. Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ., 529 S.E.2d 458, 462 (N.C. Ct. App. 2000). Additionally, a plaintiff must affirmatively plead that governmental immunity has been waived. Suarez v. Charlotte-Mecklenburg Sch., 123 F. Supp. 2d 883, 891-92 (W.D.N.C. 2000). "[I]n the absence of an allegation in the complaint in a tort action against a city board of education, to the effect that such board has waived its immunity by the procurement of liability insurance to cover such alleged negligence or tort, . . . such complaint does not state a cause of action." Fields v. Durham City Bd. of Educ., 111 S.E.2d 910, 912 (N.C. 1960).

Here, the Board argues that Stevens has not properly pleaded

35

a waiver of governmental immunity.  In response, Stevens points to
the complaint's indication that the Board "has no immunity to this
claim and ha[s] otherwise waived immunity."  This language fails
to meet the required pleading standard for two reasons.  First, it
relates only to Stevens's claims under Title VII and § 1981.  The
language appears twice in the complaint, once beneath the heading
"Count I (Violation of Title VII . . . and 42 U.S.C. § 1981)" and
once beneath the heading "Count II (Retaliation in Violation of
Section 1981 and Title VII)."  (Doc. 15 ¶¶ 44, 49.)  By its own
terms, therefore, the language is limited to the claims under which
it appears.  (See id. ("[The Board] has no immunity to this claim
and ha[s] otherwise waived immunity." (emphasis added)).  Although
Stevens contends that the phrase "ha[s] otherwise waived immunity"
implies that the Board has waived immunity for every cause of
action brought (Doc. 22 at 10), she fails to explain why this
language then appears twice in the complaint, and both times
beneath a specific claim.  Surely, if Stevens intended this
language to indicate a broad waiver of immunity for all claims
brought, such language would have needed to appear only once,
rather than be repeated beneath two distinct claims.

     Second, even if this language did relate to all claims
brought, the complaint does not indicate how the Board waived its
immunity.  Stevens provides no facts that indicate the Board waived
its immunity, such as an allegation that the Board purchased

36

insurance. Instead, the assertion of waiver is a conclusory statement unsupported by fact. This assertion is insufficient to sustain a tort claim against a governmental agency under North Carolina law. See Fields, 111 S.E.2d at 912 ("[I]n the absence of an allegation in the complaint . . . to the effect that such board has waived its immunity by the procurement of liability insurance . . . such complaint does not state a cause of action." (emphasis added)); Mullins by Mullins v. Friend, 449 S.E.2d 227, 230 (N.C. Ct. App. 1994) ("If the plaintiff does not allege a waiver of immunity by the purchase of insurance, the plaintiff has failed to state a claim against the governmental unit." (emphasis added)).

However, even if Stevens's assertion of waiver were adequately pleaded, this would not be sufficient to survive dismissal. Along with its motion to dismiss, the Board has submitted multiple affidavits indicating that the Board has not purchased insurance such that immunity would be waived pursuant to § 115C-42. (See Docs. 17-7, 17-8.) Although the Board participates in the North Carolina School Boards Trust ("NCSBT"), a board's participation in the NCSBT does not waive governmental immunity because the NCSBT does not qualify as liability insurance under § 115C-42. See, e.g., Craig ex rel. Craig v. New Hanover Bd. of Educ., 648 S.E.2d 923, 925 (N.C. Ct. App. 2007), rev'd on other grounds, 678 S.E.2d 351 (N.C. 2009); Lail ex rel. Jestes v. Cleveland Cnty. Bd. of Educ., 645 S.E.2d 180, 185 (N.C. Ct. App.

37

2007); <u>Willett v. Chatham Cnty. Bd. of Educ.</u>, 625 S.E.2d 900, 901-02 (N.C. Ct. App. 2006); <u>Ripellino v. N.C. Sch. Bds. Ass'n</u>, 581 S.E.2d 88, 92–93 (N.C. Ct. App. 2003). Stevens has made no response to this. As such, the court cannot conclude that she has alleged a prima facie case for jurisdiction over the Board in relation to her state law claims.

Because Stevens's state law claims are barred on the basis of the Board's governmental immunity, the court need not consider whether these claims would otherwise survive dismissal pursuant to Rule 12(b)(6). The Board's motion to dismiss Stevens's state law claims will be granted.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (Doc. 17) is GRANTED IN PART and DENIED IN PART as follows:

1. The motion to dismiss claim one is DENIED in relation to Plaintiff's Title VII failure to promote claim, but is GRANTED in relation to Plaintiff's Title VII discriminatory termination and § 1981 claims, which are DISMISSED;

2. The motion to dismiss claim two is DENIED in relation to Plaintiff's Title VII retaliatory discharge claim but is GRANTED in relation to Plaintiff's § 1981 claim, which is DISMISSED;

3. The motion to dismiss claims three (violations of § 1983), four (racially hostile work environment in violation of

38

Title VII), five (intentional infliction of emotional distress),

six (wrongful discharge in violation of public policy), and seven

(violation of the EEPA) is GRANTED, and those claims are DISMISSED.


                              /s/   Thomas D. Schroeder
                              United States District Judge

January 22, 2021